## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DOUGLAS M. SUTTON, III,

    Plaintiff,

    v.

WALT J. PESTERFIELD,

    Defendant.

Civil Action No.:  ABA-25-1757

## MEMORANDUM OPINION

Self-represented Plaintiff Douglas M. Sutton, III, who was previously confined at the Baltimore County Detention Center ("BCDC") in Towson, Maryland and has since been released, has filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendant BCDC Director Walt Pesterfield violated his constitutional rights based on a failure to provide hygienic conditions of confinement. ECF Nos. 1, 12. Director Pesterfield has filed a Motion to Dismiss (ECF No. 14), accompanied by a Memorandum (ECF No. 15).  Despite being advised of his right to do so, Sutton did not respond to the Motion to Dismiss and, after the time for doing so expired, the Court entered an Order directing Sutton to show cause why the case should not be dismissed for lack of prosecution.  ECF No. 20.  Sutton responded by filing a "Motion to Prove Supervisory Liability."  ECF No. 21.  Upon review of the submitted materials, for reasons set forth below, Defendant Pesterfield's Motion will be GRANTED and Sutton's Motion will be DENIED.

## BACKGROUND

Sutton alleges that inadequate water filtration was provided while he was a pretrial detainee at BCDC, resulting in his contracting helicobacter pylori ("H. Pylori"). ECF No. 1 at

2–3.  Sutton also claims that if the water filtration system did not cause the H. Pylori, then it was caused by inmates hoarding medication and being extorted to spit out and give their medication to other inmates. *Id*. at 3. Sutton states that he has been on methadone since the day after he first arrived at BCDC and he had not previously tested positive for any other substance or illness. *Id*. He further explains that blood work results from 2024 demonstrate he did not then have H. Pylori. *Id*. He claims "jail staff" have disregarded concerns that H. Pylori is prevalent in the jail, and he has not been provided with information on how to prevent a reinfection. *Id.*

In the Amended Complaint, Sutton reiterates that while incarcerated at BCDC, he contracted H. Pylori.  ECF No. 12 at 1. He states that, despite the water at BCDC testing negative for H. Pylori, a large percentage of the detainees have contracted the illness. *Id*.  He asserts that due to the large number of detainees with H. Pylori, the jail "must know" of the illness. *Id*. He explains that despite there being showers at processing, detainees are not washed or decontaminated when they arrive at BCDC. *Id*. at 2. Additionally, the mop bucket has a toilet brush floating in it, and it is known that H. Pylori is spread through fecal material. *Id*. The inmates share the cleaning materials. *Id*. Sutton explains that during his incarceration he did not see a new mop head, and when inmates clean, they are "potentially" spreading germs. *Id*. at 3. He also contends that the administration did not educate inmates on H. Pylori. *Id*. at 3, 4–5.

Sutton states that the "Kennelworth" side of the jail has poor ventilation and not everyone there has access to hot water.  *Id.* at 4.  He contends he did not have access to sufficient cleaning materials and high traffic areas were not cleaned regularly. *Id*. Inmates moving throughout the facility are not required to "maintain disinfecting or sanitary activities." *Id*. In Sutton's view, the use of hand sanitizer or other disinfectant would curb the spread of H. Pylori and other germs. *Id*. Additionally, Sutton states that the fact that third party provider's testing of water at BCDC

2

did not reveal H. Pylori does not mean that inmates are not at risk. *Id*. Sutton also claims that BCDC is infested with mice. *Id*.

On an unspecified date, Sutton was placed in a disciplinary cell where there was fecal material. *Id*. at 5. He did not wait for staff to provide him with cleaning materials because he was sure they would not. *Id*. He states that inmates at BCDC often hoard bodily fluids in containers and then throw them onto the tier. *Id*.

Sutton states that it is the Director's duty to assure the facility does its part to stop the spread of infectious disease and to provide a safe and clean environment. *Id*. at 5–6. He says there is no protocol to stop the spread of H. Pylori. *Id*. at 6. In his motion to prove supervisory liability, in which he also responds to arguments made in the motion to dismiss, he states that Defendant Pesterfield "signed off on the procedures of how cleaning supplies are handed out." ECF No. 21 at 2.

As relief, Sutton seeks compensatory damages and an investigation of the H. Pylori outbreak at BCDC. ECF No. 1 at 4. He also seeks an Order directing Defendant Pesterfield to test the entire population of BCDC using a "urea breath test," direct inmates to shower before using the phone in processing, educate inmates arriving at BCDC on the spread of H. Pylori and e-coli, and states that "something be done" about the unsanitary conditions on Tier 3. ECF No. 12 at 6–7.

Construed liberally, the Complaint alleges violations of the Fourteenth Amendment to the United States Constitution based on unsanitary conditions of confinement.

## DISCUSSION

Defendant Director Walt Pesterfield seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). As grounds, Director Pesterfield asserts that Sutton has failed to allege

sufficient facts to state plausible claims for relief against him and that he is otherwise entitled to qualified immunity.

### A.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Legal conclusions or conclusory statements do not suffice. *Id.*  A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty., N.C.*, 407 F.3d 266, 268 (4th Cir. 2005).  A self-represented party's complaint must be construed liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

### B.    Discussion

Sutton was a pretrial detainee at the time the alleged events took place. Accordingly, despite Sutton's reference to the Eighth Amendment, the Fourteenth Amendment applies to Sutton's claim for unconstitutional conditions of confinement.

"[N]ot every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)).  To state a § 1983 claim based on unconstitutional conditions of confinement, a pretrial detainee must allege "that the condition or restriction was imposed with an express intent to punish or was not reasonably related to a

4

legitimate nonpunitive government objective." *Timms v. U.S. Att'y Gen.*, 93 F.4th 187, 191 n.8 (4th Cir. 2024) (citing *Matherly v. Andrews*, 859 F.3d 264, 275 (4th Cir. 2017)); *see also Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)) (noting that a plaintiff can state a claim based on a "governmental action" that "is not 'rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose'"). Simply put, "it is sufficient that the plaintiff show that the defendant's action or inaction was . . . 'objectively unreasonable.'" *Short*, 87 F.4th at 611 (quoting *Kingsley*, 576 U.S. at 397).

Director Pesterfield contends that the claims against him should be dismissed because Sutton has failed to allege sufficient facts to state a claim against him. Although Director Pesterfield may be the official with overall responsibility for the operation of BCDC, liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation or where the defendant otherwise condoned the violation. *Love-Lane v. Martin*, 355 F.3d 766, 782–83 (4th Cir. 2004). Absent personal participation, a supervisory official may be held liable upon a showing that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens such as the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the alleged offensive practice; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Sutton has not alleged facts showing that Director Pesterfield had any personal role in the maintenance of water quality or other cleaning/maintenance issues at BCDC, that he was actually aware of the problems with the water quality or other unhygienic conditions described, or

that he personally received any notice from Sutton regarding his concerns. Rather, Sutton provides only a single allegation referencing Director Pesterfield. Sutton states that the Director has a duty to stop the spread of infectious disease and to provide a safe and clean environment. ECF No. 12 at 5. Where, as here, Sutton does not claim that Director Pesterfield was aware of the conditions complained of and he has not alleged facts that would support the conclusion that Director Pesterfield either personally participated in the alleged constitutional violations relating to the water quality and other conditions of confinement or that he had the requisite knowledge of the relevant events to be subject to supervisory liability, the claims against Director Pesterfield will be dismissed. *See Mulcahy v. Pesterfield*, Civil Action No. TDC-23-3530, 2025 WL 2638180 * 3-4, D. Md. 2025).

Moreover, Sutton's claim also fails because he has failed to allege sufficient facts linking his contracting H. Pylori to the conditions of his confinement at BCDC, or that any condition which led to his contracting the illness was anything more than negligence. Where, as here, a claim is based solely on a Plaintiff's supposition as to how he contracted an illness, but the Plaintiff provides no factual allegations to support his claim, his claim is subject to dismissal. The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)) (internal quotations omitted). Sutton attributes his medical problems to the conditions at BCDC; however, Sutton has failed to allege sufficient facts that Director Pesterfield was deliberately indifferent to a substantial risk of Sutton's suffering from serious harm due to his conditions of confinement at BCDC.[1]

**CONCLUSION**

---

[1] Therefore, the Court need not address Defendant's qualified immunity defense.

For the foregoing reasons, Defendant Pesterfield's Motion to Dismiss (ECF No. 14) will be GRANTED and Sutton's Motion to Prove Supervisory Liability (ECF No. 21) will be DENIED. A separate Order shall issue.


 July 13, 2026____
Date

_____/s/_____
Adam B. Abelson
United States District Judge